UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHAUNCEY MOORE,
    *Plaintiff*,

    v.

CORRECTIONAL OFFICER MURRAY, *et al.*,
    *Defendants*.

No. 3:16-cv-2008 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Chauncey Moore is currently incarcerated at New Haven Correctional Center. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against two correctional officers at Bridgeport Correctional Center. Plaintiff seeks monetary damages for defendants' violations of his rights under the Eighth and First Amendments. After an initial review, the Court concludes that the complaint should be served on both defendants.

**BACKGROUND**

The following allegations from plaintiff's complaint are accepted as true solely for purposes of the Court's initial review. On February 22, 2015, plaintiff slipped and fell at Bridgeport Correctional Center. Plaintiff was sent in an ambulance to a local hospital for treatment of his injuries. Defendant Correctional Officer Atkins was assigned to drive plaintiff back to Bridgeport Correctional Center upon plaintiff's discharge from the hospital. Though plaintiff was still in a great deal of pain from the accident, defendant Atkins ordered plaintiff to get out of bed and into a wheelchair to be escorted to the parking lot. Plaintiff slipped as he attempted to climb into the vehicle. When he stumbled and screamed out in pain, defendant Atkins laughed at him and accused him of faking his injuries. Doc. #1 at 3 (¶¶ 1–3).

During the drive back to Bridgeport Correctional Center, defendant Atkins continued to verbally taunt plaintiff. Plaintiff stated that he planned to file a lawsuit against the State of Connecticut for his injuries, as well as a grievance against Atkins for taunting and harassing him. Defendant Atkins responded that he was "going to give [plaintiff] something to grieve about." *Id.* at 3–4 (¶ 3). Atkins then began to alternate between slamming on the brakes and the accelerator, making the vehicle jerk back and forth, which caused plaintiff to scream out in pain. Atkins warned plaintiff that if he attempted to file any grievances, he would regret it and his grievances would go unheard. *Id.* at 4 (¶ 3).

Back at Bridgeport Correctional Center, plaintiff was transferred to the hospital unit of the facility. He received pain medication and a cane to assist him in walking. He submitted a grievance form against Atkins on February 23, 2015, the day after the incident. *Id.* at 4–5 (¶¶ 4–5). On March 5, 2015, plaintiff was transferred out of the hospital unit and into a dormitory unit. *Id.* at 5 (¶ 6). On March 20, 2015, he filed a second grievance form against Atkins, having received no response to the first form. *Id.* at 6–7 (¶ 9).

On April 20, 2015, plaintiff went to the officers' station in his unit to get a roll of toilet paper. When he approached defendant Correctional Officer Murray and asked for toilet paper, Murray began to yell at plaintiff. He accused plaintiff of faking his injuries and verbally harassed him in front of other officers and inmates. *Id.* at 7 (¶ 10).

Later that evening, defendant Murray approached plaintiff while plaintiff was sitting down playing chess. Murray kicked plaintiff's chair, hit plaintiff in the face, and then walked away laughing. Plaintiff, who was still in pain from his earlier accident, needed help from fellow inmates to stand up and walk back to his bed. The impact from Murray kicking the chair

reinjured plaintiff's back. Plaintiff required extra pain medication that night in order to sleep. *Id.* at 7–8 (¶ 11).

The next morning, plaintiff filled out a grievance form against Murray and handed it directly to a supervisor, Captain Poidamani. Captain Poidamani and Lieutenant MacDonald took a statement from plaintiff, which they typed up and had him sign. They told him they would launch an investigation. They then escorted plaintiff to the medical department, to have a photograph taken of his face and to have his back examined. Captain Poidamani and Lieutenant MacDonald also took statements from several eyewitnesses to the incident. *Id.* at 8–9 (¶¶ 12–14).

Later that day, in the presence of Captain Poidamani, Officer Murray apologized to plaintiff for kicking his chair and striking him in the face. He stated that he had been joking and never intended to injure plaintiff. Half an hour later, Lieutenant MacDonald escorted plaintiff to Deputy Warden Walker's office. Deputy Warden Walker told plaintiff she was taking the matter seriously and would launch an "extensive investigation." She asked plaintiff if he wanted to press charges against Murray; plaintiff said he did not want to press charges at the moment but might change his mind in the near future. *Id.* at 9–10 (¶¶ 15–16).

On May 2, 2015, plaintiff filed a grievance appeal form, having received no response to the two grievance forms he submitted in February and March against defendant Atkins. On May 12, 2015, prison officials transferred plaintiff from Bridgeport Correctional Center to MacDougall Correctional Institution. Plaintiff believes he was transferred because of the grievances that he filed against defendant Atkins. After his transfer, plaintiff filed a final grievance against Atkins. Plaintiff never received a response to any of the grievances that he filed against Atkins. *Id.* at 10–11 (¶¶ 17–19).

Plaintiff seeks damages under 42 U.S.C. § 1983 against defendants Murray and Atkins in their individual capacities. He alleges that they "owed [him] a duty of care and protection but intentionally harmed him by causing him pain and injury." *Id.* at 12. Plaintiff claims that as a result of defendants' actions, he developed arthritis in his spinal cord, making it difficult for him to walk, bend over, and move around. He also alleges that he has suffered mental and emotional distress.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). Nevertheless, it is well-established that "pro se complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### *Claims against Defendant Atkins*

Plaintiff alleges that defendant Atkins was assigned to drive him back to the prison after his release from the hospital for a serious back injury, and that Atkins drove erratically on purpose in order to hurt plaintiff, continuing to jerk the vehicle back and forth even as plaintiff screamed out in pain. These allegations, construed liberally, raise claims under the Eighth

4

Amendment both for excessive use of force and for deliberate indifference to a serious medical need.

The use of excessive force against a prisoner may constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010) (*per curiam*). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37. Plaintiff alleges, in essence, that Atkins used the vehicle as a weapon, jerking it back and forth with the purpose of hurting plaintiff. These allegations state a plausible claim for relief for the use of excessive force in violation of the Eighth Amendment.

To state a claim for deliberate indifference to a serious medical need, plaintiff must show both that his medical need was serious and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Here, plaintiff had just been released from the hospital with a serious back injury; this injury warranted a trip to the emergency room, as well as a transfer to the hospital unit upon his return to the correctional facility. Atkins was well aware of plaintiff's injury and, according to plaintiff, acted intentionally to exacerbate that injury. These allegations state a plausible claim for deliberate indifference to a serious medical need.

The Court also construes plaintiff's complaint to allege a claim for retaliation in violation of the First Amendment against defendant Atkins. To establish a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794

F.3d 290, 294 (2d Cir. 2015). Here, plaintiff engaged in protected speech when he told Atkins that he planned to file a lawsuit against the state and a grievance against Atkins. *See, e.g.*, *Flemming v. King*, 2016 WL 5219995, at *4 (N.D.N.Y. 2016) ("Courts in this Circuit have routinely found that a prisoner's threat of filing a grievance or lawsuit constitutes protected activity."). Plaintiff alleges that Atkins immediately responded by jerking the vehicle back and forth in order to hurt him, and by threatening him not to file any grievances. These allegations state a plausible claim for relief for retaliation in violation of the First Amendment.

### *Claim against Defendant Murray*

Finally, the Court construes plaintiff's complaint to allege a claim against defendant Murray for excessive use of force. Plaintiff alleges that defendant Murray, who was aware of plaintiff's back injury, intentionally kicked his chair and struck him in the face. Murray later claimed that he had been joking but did not contend that his actions were in any way intended to maintain or restore discipline. Plaintiff's allegations state a plausible claim for relief for the use of excessive force in violation of the Eighth Amendment. *See Wilkins*, 559 U.S. at 37; *see also Sanchez v. Port Auth. of N.Y. & New Jersey*, 2012 WL 1068078, at *9 (E.D.N.Y. 2012) ("The reasonableness of the force used may be assessed in the light of the officer's knowledge of a preexisting injury.").

## CONCLUSION

The Court enters the following orders:

(1)     The complaint will proceed on the claims against defendant Atkins for deliberate indifference to a serious medical need, excessive force, and retaliation, and the claim against defendant Murray for the use of excessive force.

(2) Within **twenty-one (21) days** of this Order, **the Clerk shall** ascertain from the Department of Correction Office of Legal Affairs the current work address for each defendant and mail a waiver of service of process request packet to each defendant in his individual capacity at his current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Each defendant shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in

the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or the attorney for defendants of his new address.

      (8)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents in this case.

It is so ordered.

Dated at New Haven this 27th day of January 2017.

                                                      /s/ *Jeffrey Alker Meyer*
                                                      Jeffrey Alker Meyer
                                                      United States District Judge